UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RICHARD J. ABRAMO, ROBERT V. BROWN,
and JOHN A. TOMASSETTI,

                                Plaintiffs,

        v.                                                  1:06-CV-1433 (LEK/RFT)

STEVEN SHAW,

                                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LAWRENCE E. KAHN
Senior United States District Judge

## DECISION and ORDER

       Plaintiffs Richard J. Abramo, Robert V. Brown, and John A. Tomassetti ("Plaintiffs") commenced the instant action against Defendant Steven Shaw ("Defendant") alleging a breach of a Stock Purchase Agreement. Presently before the Court is Plaintiffs' unopposed motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure seeking an award of compensatory damages in the amount of $100,000 plus interest at the contractual rate of 9% per annum, an award of attorneys fees and costs, and an order directing Defendant to deliver $1,652,962, and any future required amounts, to a surety as collateral pursuant to certain bonding obligations.

**I.     FACTS**

The undisputed facts are as follows.[1]  Plaintiffs are former owners of Tougher Industries, Inc.[2]  In November 2003, Plaintiffs and Defendant acquired 100% of the shares of capital stock of Tougher Industries from PSEG Energy Technologies, Inc.  Plaintiffs and Defendant each acquired a 25% interest in Tougher Industries.

In December 2005, Plaintiffs and Defendant entered into a written Stock Purchase Agreement (the "Agreement").  Pursuant to the Agreement, Plaintiffs agreed to sell to Defendant their shares in Tougher Industries.  In exchange, Defendant was obligated to pay Plaintiffs an initial lump sum of $150,000 plus four additional monthly payments of $25,000 each.  Payments not paid within three business days of the due date were subjected to interest at 9% per annum.

At the time the parties entered into the Agreement, a surety had issued certain surety bonds with respect to construction jobs of Tougher Industries.  Plaintiffs and Defendant were signatories to an agreement of indemnity with the surety for Tougher Industries's obligations.  The Stock Purchase Agreement required Defendant "to indemnify and hold [Plaintiffs] harmless against any and all claims that may arise from any and all bonding obligations relating to all construction projects existing as of the date hereof. . . ."

The Agreement was entered into on May 6, 2006.  At that time, Plaintiffs conveyed their equity interest in Tougher Industries to Defendant.  Defendant, in turn, paid a lump sum of $150,000 to Plaintiffs.  Defendant did not, however, make any subsequent payments.

---

[1] Plaintiffs submitted a properly supported statement of material facts pursuant to N.D.N.Y.L.R. 7.1(a)(3).  These facts are deemed to be true because Defendant failed to submit a responsive statement of material facts.  See N.D.N.Y.L.R. 7.1(a)(3).

[2] Tougher Industries currently is in a Chapter 11 Bankruptcy proceeding.

In October 2006, the surety demanded that Plaintiffs and Defendant deposit collateral totaling $480,000 to cover outstanding risks to the surety. Citing to the hold harmless and indemnification provisions of the Agreement, Plaintiffs demanded that Defendant pay the collateral in full himself. Defendant failed to do so. Thereafter, the surety demanded collateral in the total amount of $1,652,962.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In applying this standard, courts must " 'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.' " Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001) (quoting Cifra v. General Electric Co., 252 F.3d 205, 216 (2d Cir. 2001)). Once the moving party meets its initial burden by demonstrating that no material fact exists for trial, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted). Rather, the non-movant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor." Brown, 257 F.3d at 251 (citation omitted). Bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991); Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990).

**III.     DISCUSSION**

    **a.     Payment for Equity in Tougher Industries**

Plaintiffs seek a determination that Defendant breached his obligation with respect to the payment terms under section 1.2 of the Agreement.  Section 1.2 provides that "[i]n consideration for the purchase by the [Defendant] of the Stock, the [Defendant] shall pay to the [Plaintiffs] on the Closing Date an aggregate amount in cash which represents the sum of $150,000. . . . [Defendant] shall also make four payments of $25,000 each. . . ."  The final payment was to be made on December 29, 2006.  Late payments were subjected to a 9% per annum interest rate if payments were not made within three business days of the due date.

The undisputed evidence in the record demonstrates that Defendant paid the initial $150,000, but failed to make any additional payments.  Accordingly, Defendant has breached the Agreement in the amount of $100,000 (four payments of $25,000), plus interest calculated at a rate of 9% per annum.

    **b.     Specific Performance**

Plaintiffs next seek an order requiring Defendant to fulfill all obligations to post collateral as required by the surety.  Under New Jersey law, which applies here, specific performance is a discretionary remedy resting in equitable principles.  Stehr v. Sawyer, 40 N.J. 352, 357, 192 A.2d 569 (1963).  The remedy is not available unless the contract is certain, fair and just in its terms, and enforceable without hardship to either party.  Alnor Construction Co. v. Herchet, 10 N.J. 246, 249, 90 A.2d 14 (1952), see also Barry M. Dechtman, Inc. v. Sidpaul Corp., 89 N.J. 547, 553, 446 A.2d 518 (1982).

Here, there is nothing before the Court suggesting that the Agreement is unfair or unjust or that enforcement would cause hardship to any of the parties. Further, the terms of the Agreement are sufficiently certain to allow for enforcement. The Agreement requires Defendant to indemnify and hold Plaintiffs harmless against any and all claims that may arise from any and all bonding obligations relating to construction projects that existed at the time of the date the parties entered into the Agreement.

The undisputed evidence in the record is that the surety has demanded the establishment of a $1,652,962.00 net loss reserve that must be delivered in the form of cash, securities and/or real estate. The evidence further demonstrates that this net loss reserve pertains to construction projects that existed at the time the parties entered into the Agreement. Accordingly, the hold harmless/indemnity provision of the Agreement is applicable to this net loss reserve requirement. Because Plaintiffs are facing a personal obligation to the surety in the amount of $1,652,962 and Defendant agreed to hold Plaintiffs harmless from any such liability, Plaintiffs are entitled to specific performance of the obligation to post a $1,652,962 net loss reserve with the surety and any future reserve amounts required by the surety in connection with construction projects existing at the time the parties entered into the Agreement. See The Hanover Ins. Co. v. Clark, 2006 WL 2376428, at *5 (N.D. Ill. 2006); American Motorists Ins. Co. v. United Furnace Co., Inc., 876 F.2d 293, 299-300 (2d Cir. 1989).

### c. Attorney's Fees, Costs, Expenses and Disbursements

Plaintiffs also seek attorney's fees, costs, expenses and disbursements incurred in connection with prosecuting the instant litigation. Section 6.3 of the Agreement provides that the parties shall "indemnify and hold the other [parties] . . . harmless from and against any

damages, liabilities, losses and expenses (including but not limited to, reasonable attorney's fees incurred in defending any claim by a third person) . . . which may be sustained or suffered by the respective Indemnified Party to the extent directly resulting from or directly arising out of a breach by the Indemnifying Party of the representations, warranties, covenants or other agreements of the Indemnifying Party contained in this Agreement." This provision is broad enough to provide for attorney's fees, costs and disbursements incurred by Plaintiffs as a result of the breach of the Agreement. Accordingly, Plaintiffs are entitled to an award of reasonable attorney's fees, costs, and disbursements. Plaintiffs may submit proof of their reasonably attorney's fees, costs and disbursements within thirty days of the date of this Order.

## IV.  CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that Plaintiffs' Motion for summary judgment (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED**, that Plaintiffs are entitled to: (1) the sum of $100,000, plus interest at the rate of 9% per annum; (2) an award of specific performance obligating Defendant to fulfill his obligations under section 4.2(c) of the Agreement, including posting $1,652,962 collateral with the surety, and any additional amounts the surety may require in connection with construction jobs existing at the time the parties entered into the Agreement; and (3) an award of reasonable attorney's fees, costs, and disbursements incurred as a result of the breach; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on all Parties.

**IT IS SO ORDERED.**

Dated:  January 14, 2008
        Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge